Okay, Balbin v. Johnson, Ms. Viziana? May it please the court, Anita Viziana for Alexis Johnson appellant. This is a case that rises and falls on the clearly established prong of the qualified immunity analysis. Neither plaintiff nor the district court or plaintiffs extremely capable court-appointed counsel for the purposes of this appeal have been able to point to a single case in support of plaintiff's assertion that Officer Johnson violated a clearly established right here, even today. Counsel, it seems to me that part of the problem in this case is a disconnect between the facts as outlined by the district court in his order versus what was actually in the complaint. And since we're here de novo, it seemed to me to go back to the complaint is sort of the best way to go about doing it. What are the allegations in the complaint regarding the First Amendment retaliation claim? So that's actually, if you go back to the the complaint itself, Seems like that's what we have to do, right? I would posit that that's even better for Officer Johnson's position. Tell me what what what are the allegations there regarding the First Amendment retaliation? That Officer Johnson threw away Balbin's effects in retaliation for plaintiff beating a criminal charge Johnson put on plaintiff. Nothing about not guilty, him pleading not guilty, right? That's correct, your honor. That came up, as I understand it, in the response to the motion to dismiss? Correct, your honor. Can you amend your complaint based on a response to a motion to dismiss? Generally not, your honor. Right, so if we're stuck with the allegations in the complaint, in the light most favorable, and certainly reading it liberally for a pro-state point of view. Taking all the allegations as true. Right. Is there any First Amendment statement in the, he beat the charge, I'm mad because he beat the charges? No, your honor, and that was part of the argument that was made initially to the district court in the motion to dismiss, that there wasn't any activity on plaintiff's part at all, right? Beating a criminal charge is something that has been sort of soundly rejected because the charges are dropped or not dropped or accepted or not accepted. Or it could be retaliation, but is there a First Amendment statement there? There's no activity, there's no petition activity. If we were to vacate and remand, would the plaintiff have an opportunity for leave to amend, to allege a due process violation? So, your honor, I would like to say a couple of things in response to that. The first is there may be finality of, I guess because the plaintiff didn't himself take this appeal, I'm not entirely sure whether the pleadings are closed. Which the plaintiff prevailed and your complaining should not have, right? So we say, well, you're right, should not have. But if you put the plaintiff back in the position that it would have been, he would have been from the start, he could have moved for leave to amend, right? Your honor, what I'd like to say is that even if he were to do so, go back to the district court, pardon me, and amend the complaint to frame it as a due process violation, it would be futile for the purposes of this case. Why? Because you have the qualified immunity question and it still fails at the clearly established law. I'm not sure about that. So, it seems to me we'd have to look at that as it would be alleged. It might well be, if the complaint is . . . you know, after pleading not guilty, prevailed. I wonder whether that might be an obvious clarity situation in terms of whether retaliation for that is a violation of due process. What I'd really like to reflect on is the Chief Judge's concurrence in a recent case, Zen Group versus Agency for Healthcare Administration. And so, that's a 2023 case. And I'd like to, again, reiterate . . . Judge Luck remembers that one, I'm sure. And as I recall, didn't we say that there was no clearly established violation for a due process retaliation claim? That's correct. Yeah, but it was a fine, right? It wasn't retaliation for beating a criminal charge. No, it was retaliation for challenging an administrative action, right? For sort of pleading not guilty to and challenging administrative proceedings. But even today, then, the court has yet to recognize an anti-retaliation right under . . . I'm sorry, the due process clause, which is why even if . . . In other words, we held that the right was not clearly established. Not that under the facts of that particular case there wasn't a clearly established violation, but that the right itself, the right to do . . . a retaliation under the . . . The right to due process to contest a fine. You found that there was a due process right, but not that that activity triggered an anti-retaliation right, which is what the claim is here. Did the inmate engage in activity that triggers an anti-retaliation right, number one? And is that a clearly established right? And I would posit that number two is the easiest question. Clearly, no. Even if the plaintiff were given an opportunity to go back . . . You know, the thing that troubles me is the notion that the government can punish you. So I . . . For contesting . . . for requiring the government to prove a case against you. If the due process clause allows that, then I don't know what the guarantee of due process means. It's a right to be heard. Yes, you've got one. Yes. I'm sympathetic to that concern, Chief Judge, truly. And what I'd do is I'd point this court to the Supreme Court's opinion in Hudson v. Palmer. And in Hudson v. Palmer, the court was considering the constitutionality of unauthorized random searches of inmate cells. And if you'd indulge me for a moment, the Supreme Court said . . . the . . . acknowledged the Court of Appeals was troubled by the possibility of searches conducted solely to harass inmates. However, we disagree with the court's proposed solution. And I would posit, like in Hudson, here the solution to that concern is not to find that a criminal plea triggers an anti-retaliation right. In Hudson's Fourth Amendment case, and the concern there was a hypothetical concern. Here, again, taking the allegations of the light and most favorable of the plaintiff, we have actual evidence that a retaliatory act was done. I mean, so this isn't really a Hudson case. I mean, it very well may be that there is a right under the due process clause not to be retaliated against for asserting your due process rights. That may exist. But the question is, did it exist in, what, 2000 when this . . . 2020. Right. So . . . Yeah, it wouldn't. And if we've held that it didn't, I'm not sure when we're ever going to be able to say it did. I would agree with that, Your Honor, which is why I would . . . See, that's one of the things that bothers me about this. And candidly, again, quoting from Zengroup, we should, in an appropriate case, recognize that a person has the right to be free for retaliation for invoking his right to be heard before a proposed deprivation of his property. I would posit this is not an appropriate case. Not just because you don't really have a due process argument framed here, but . . . What's more fundamental to due process than the right to contest a criminal charge? I completely understand, Your Honor. What I'd posit, though, is, again, quoting from . . . I'm actually going to quote from, forgive me on the mispronunciation, Echols v. Lawton. Recall that the Constitution does not provide the only standard of redress for those wronged by public officials. Finding that a criminal plea creates the requisite protected activity for an anti-retaliation claim, particularly for an inmate, would allow virtually every inmate to frame every adverse action as a potentially prescribed constitutional violation. This is unusual, isn't it? This is an inmate who was charged with a violation and found not guilty. That's not every inmate. I understand, Your Honor. Of course, I don't know that we can parse the legal tenet so  You want to make the slippery slope argument to me, and I say, okay, is there really one? I understood, Your Honor. Ultimately, that would be this court's determination. Do we find that an inmate triggers an anti-retaliation right by engaging in the activity of entering a not guilty plea when those charges emanate from his own . . . And prevailing. And prevailing, but. And perhaps most importantly . . . Prevailing is the important part here, right? You say that because that's why it's not a First Amendment case. Wouldn't the argument be, though, that by the time he prevailed, his due process rights with that charge had completed, and whatever else happens after that could be a violation, certainly. But why would that be necessarily a due process violation when the process for that charge had already completed? I tend to agree, right? The due process right is really the invocation of the right to be  As long as you get the right to be heard, it doesn't matter that the government later punishes you for it. Well, of course it matters, Your Honor, right? But it doesn't necessarily become a constitutional claim. A wrong is a wrong, and there are remedies for wrongs that don't necessarily stem from the Constitution. All right. I think we understand your case, Ms. Siena. Mr. Funes. Good morning, Your Honor. It's Freddie Funes on behalf of Appellee Manuel Bogan. I know you, you know, Judge Meadowbrook's kind of recharacterized your complaint, but it does seem to be problematic to label this as a free speech or a First Amendment case. Yes, Your Honor. When you just look at the complaint. I agree that if you read the complaint, I think it's pages 14 and 15, and specifically he does specifically state that he beat the charges, and that's why he was retaliated against. That's not First Amendment. That is not First Amendment. I will say, though, if you Do we have to vacate and remain? I don't know if you have to, and then here's my argument. Okay. All right. If you read Judge Meadowbrook's order, I think it's page 7, he specifically says, like, look, I understand that that's how you framed this. I'm not getting to that issue. And he looked at the response, and I will say pleadings for pro se should be constructed liberally. Now, whether this falls within liberally or goes far afield, I understand that point, but, you know, Judge Meadowbrook squarely put it within the expression, speech, context. But nobody, pro se or otherwise, can amend their complaint based on a response. I mean, that's sort of black letter law that we have here, and it makes good sense, right? If you're the master of your pleading, then you're stuck with your pleading. And here, your client pled even liberally construed that some process right that he asserted or won and went through was the reason for the retaliation, not any communicative act, which is the essence of a First Amendment claim, right? No, look, I agree with that. I don't think that I have an argument as to that. If you read the complaint, he is somehow saying that. And so once that falls, it seems to me that the rest of it falls with it. In other words, once we read the complaint, which we de novo are required to do, and don't find that it's alleged as sort of has been teed up, I just don't see how we can then conclude that there was a First Amendment violation. So to me, I think vacating or remanding is the right thing. What happens below, I don't know the answer to. How it will be properly characterized after screening, assuming he's still pro se, is not really our business. And how it's going to be litigated and whether the county settles is not any of our business yet. And so there's a lot that could happen before we get to that point. But I just, I'm trying to understand how we can do anything other than read what's there as an assertion of something other than a First Amendment right. Sure, I understand, Your Honor, and I'm not here saying that somehow that's some ludicrous argument. You read the complaint, and it is squarely that he phrases it as the case law that Officer Johnson has found about, I beat the charges and that's why I was retaliated. I will say, though, you know, there is another avenue, and that is, you know, as this court has held, specifically in the state of Cummings versus Davenport, you know, the first step for any qualified immunity issue, and especially if there's jurisdiction under the collateral order doctrine, is that the defendant must properly meet the burden of showing that they were acting within the scope of discretionary authority. And I think here that that probably hasn't been met. Judge Middlebrook squarely held that essentially . . . I mean, look, guards have to search inmates' belongings, throw away contraband, that kind of stuff. They have the discretionary authority to do that kind of stuff, don't they? Look, I will say this. As a matter of maybe common sense . . . You don't look at the result to see whether, in evaluating that, whether, oh, well, you know, he threw away things he shouldn't have thrown away. That's not the issue. They do searches, they throw away items. That's just, that's like common authority for corrections officers, right? So I will say this. I'm not arguing that because she did it improperly that that somehow changes the scope. But my understanding of scope of discretionary authority is really is this within the job responsibilities of the governmental employee. Right, but we don't look to the four corners of the complaint for that. I mean, otherwise, no . . . let me put it this way. No defendant is going to . . . I'm sorry, no plaintiff is going to allege that it's within the discretionary authority. And yet, we grant qualified immunity all the time, and district courts do all the time on the complaint. And that's because we aren't limited in that question. That's a legal question, whether something's within the scope of work. That's not a factual allegation within the four corners of a complaint. And so, as a matter of law, you're right that it's certainly not in the four corners that that's their job. But as a matter of law, can we not understand that it's within the scope of a corrections officer duty to search for contraband? I don't think . . . well, look, as a matter of law, you can. Don't . . . would you dispute that? Is there any contrary law that you know of? Is there any contrary law? I mean, if you read Hudson, if you read Turner v. Safley, if you read Bell v. Wolfish, if you read our Powell decision, the Supreme Court's Florence decision, all of them seem to suggest that searching for contraband in various contexts, whether it's sales, whether it's through mail, whether it's on someone's person, is very much within the job of a corrections officer. How do we conclude otherwise? Sure, but I will say two points. One, it's not . . . it's not really Mr. Baldwin's burden to show that it was his . . . That's my point. I agree with you it's not. But the question is a legal question for the court. And if it's not limited to the four corners, and as a matter of law, wouldn't a court be required to find that, that it is? I agree with you it's not his burden, but . . . Right, but there's got to be some sort of either statute or regulation or case law. What's your best argument in one sentence about why this officer was not acting within their discretionary authority? Sure, in one sentence is that if you look at the motion to dismiss on page, I think it's six, docket entry 37, it is one throwaway line and the only citation to anything is pages 14 and 15 of the complaint. And if you look at Judge Middlebrook's order . . . I'm saying how about one sentence that someone who's not looking at those pages of the complaint would understand, right? A sentence about why that is possibly not within this officer's discretionary authority to search for a contraband. All right, so my argument there would be simply this. I don't know what exactly the scope of a corrections officer's jobs and duties are and there is nothing . . . I understand that you can draw a national inference base from our everyday experience that that would include throwing away property, but there's nothing in the complaint or cited authority to say that this specific correction officer had as part of her job obligations the right to throw inmates . . . If the allegation was that you violated my due process rights and my Fourth Amendment rights and a slew of other rights because you served me poisoned food, if that's the claim and I was poisoned and injured as a result, that's the it, that's the allegation. Would we not, would any court not say it's within the scope of a corrections officer's duty to feed prisoners as part of housing them? I mean, do we need a statute on point to say that or can we not just understand as a matter of law that when you house someone, your obligation is to feed that person? In that situation, Your Honor, I completely agree that context . . . I guess I don't understand how can we not understand from just long experience of what corrections officers do, supported by any number of Supreme Court in our cases, that say that it's, that one of the things that a corrections officer do is search people for contraband. Yeah, I would just say that it would . . . And control inmates' property. Yeah, I would say this, and maybe this is a function of my ignorance, but just because, and I will say, when I first thought about it, I did come to the conclusion, as Your Honors are doing, that this is sort of an obvious thing that a corrections officer would in fact have the ability to look for contraband, throw away property, but as I thought about it, it's a very well-regulated environment and I just do not know whether there are regulations that say these officers can do this, these officers can do that. And so, yes, I understand that generally, if you would ask me about a generic corrections officer, can they throw away a prisoner's properties if it's contraband? Yeah, I would imagine so, but that doesn't mean that necessarily this specific corrections officer working Miami-Dade County Correctional Facility would have that same authority for whatever reason. I'm not a warden, and I know that Your Honors are very well aware of the case law that courts are not super wardens, they just follow what the prison regulations say, and if there's a safety issue, you sort of just administer it. So that would be my argument on that point. And look, I don't know if Your Honors want me to get into the clearly established law and the free speech stuff. Obviously, I do think, as Chief Judge Pryor has sort of mentioned, that there is a serious and maybe even kind of obvious concern with punishing an inmate for pleading not guilty. Now, I understand the courts- And prevailing. And prevailing, yes, understood. And Your Honor, you're absolutely correct that this is a very sort of limited case, because I also thought about the fact that, well, every prisoner would try to bring a claim like this, but the truth of the matter is that in this situation, he was charged while in prison, he went to a state court, and the case got dismissed for whatever reason. And I'm pretty sure there is case law out there saying pretty squarely that- I mean, it's another thing altogether to me, when you commit perjury or whatever, when you don't beat the charge, so to speak. Yeah, I understand. I mean, look, we punish offenders. We give them sentencing enhancements for obstructive conduct and perjury and things of that kind. So, that in and of itself, to me, is not the problem. But when you plead not guilty and you win, and then you get punished for that, that seems to me more of a problem. Yeah, and my understanding is that there's case law out there that, I think, correctly probably should say, if you lose, then you can't really bring these type of claims. And so, Your Honor, unless there are any further questions, I don't have any. Thank you, Mr. Finnis. Thank you for your time. Ms. Viziana, sometimes, you know, you just . . . you know when to stop. All I'd really like to say to the court is I would really like to mention that I don't think vacating and remanding would be the best course for this case, simply because this district court has already . . . What do you want us to do? Just reverse with instructions to grant qualified immunity. On this charge. That's correct, on this inmate's claim.  A retaliation. Vacate and remand with instructions to grant qualified immunity for this claim. That's exactly right, Your Honor. Yeah. Thank you very . . . unless the court has any further questions for me. I don't hear any. Thank you. Thank you very much. We'll be in recess until tomorrow.